IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DEBRA L. SHIPMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 2:12-CV-1795-LSC |
| ) | |
| CAROLYN COLVIN, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OF OPINION

I.   Introduction

The plaintiff, Debra L. Shipman, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB"). Ms. Shipman timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Shipman was forty-one years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a high school education. (Tr. at 24, 80.) Her past work experiences include employment as a mail sorter for the United States Postal Service. (*Id.* at 25, 91.) Ms. Shipman claims that she became disabled on December 17, 2000, due to back pain and depression. (*Id.* at 85-86.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made

and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Shipman was insured through December 31, 2006. (Tr. at 22, 35.) He further determined that Ms. Shipman has not engaged in substantial gainful activity since the alleged onset of her disability through her date of last insured, December 31, 2006. (*Id.* at 35.) According to the ALJ, Plaintiff's degenerative disc disease of the lumbar spine, history of depression/anxiety, and obesity are considered "severe" based on the requirements set forth in the regulations. (*Id.* at 36.) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1. (*Id.*) The ALJ did not find Ms. Shipman's allegations to be totally credible, and he determined that she has the RFC to perform light work which allows the ability to sit or stand at her option; occasional bending, stooping, or climbing; and no upper or lower pushing/pulling of her extremities. (*Id.*)

According to the ALJ, Ms. Shipman is unable to perform any of her past relevant work, she is a "younger individual," and she has "at least a high school education" as those terms are defined by the regulations. (*Id.*) He determined that the "transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled.'" (*Id.*) Even though Plaintiff could not perform the full range of light work, the ALJ used Medical-Vocation Rule 202.21 as a framework for deciding that there are a significant number of jobs in the national economy that she is capable of performing, such as a shipping and receiving clerk. (*Id.*) The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time from December 17, 2000, the alleged onset date, through December 31, 2006, the date last insured." (*Id.*)

II.  Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is

a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (*quoting Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision

reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III. Discussion

Ms. Shipman alleges that the ALJ's decision should be reversed and remanded for several reasons. First, she claims that the Commissioner violated her procedural due process rights by not notifying her of her date of last insured ("DLI") for DIB purposes. (Doc. 6 at 5.) Second, Plaintiff contends generally that the ALJ's RFC assessment is not based on substantial evidence, and sets forth various sub-claims, such as that the ALJ erred in giving little weight to her treating physician's opinion, the ALJ erred in not obtaining a consultative examination, and the ALJ did not comply with Social Security Ruling 96-8p. (*Id.*) Third, she claims that the ALJ failed to apply Social Security Ruling 83-20 because he did not obtain testimony from a medical expert.

    A.    Plaintiff was not deprived of her procedural due process rights in connection with her DLI

Plaintiff states generally that the Commissioner's treatment of her claim "lacks due process from start to finish," (doc. 6 at 5), but the only argument she makes with any specificity is that the Commissioner violated her due process rights by not

notifying her of her DLI for DIB purposes. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations marks omitted). Moreover, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997).

In making her argument that she was entitled to be advised of her DLI, Plaintiff relies solely on a Middle District of Florida district court case, *Frazzetto v. Chater*, 904 F. Supp. 1371 (M.D. Fla. 1995), which she miscites as an Eleventh Circuit case. Even if the case were binding on this Court, which it is not, it is also not applicable here because it dealt with whether a claimant is entitled to a supplemental hearing on the grounds of mistake and newly discovered evidence when an ALJ used the incorrect DLI in making his findings. *See Frazzetto*, 904 F.Supp. at 1373. In contrast here, Plaintiff has never argued that the ALJ used an incorrect DLI, and in fact, Plaintiff was put on notice of her DLI prior to the hearing. At the outset of the hearing, the ALJ asked Plaintiff's representative whether he had any objections to the proposed exhibits—Exhibits 1A through 10F—which included a certified earning record

indicating Plaintiff's DLI was December 31, 2006. (Tr. 78, 126). Thus, Plaintiff's argument that she was not aware of her DLI and her due process rights were violated is not well taken. Plaintiff has failed to show she was prejudiced, especially in light of the fact that her representative was in possession of the exhibits in this case which indicated her DLI, and presented no objections to the exhibits or the DLI at the hearing.

B. Substantial Evidence Supports the ALJ's RFC Assessment

The plaintiff contends generally that the ALJ's RFC finding was not based on substantial evidence, making various sub-claims in connection with this claim. The regulations specifically state that the responsibility for assessing a claimant's RFC rests with the ALJ. *See* 20 C.F.R. § 404.1546(c); Social Security Ruling ("SSR") 96-5p. The assessment of a claimant's RFC is "based on all the relevant evidence in [the claimant's] case record," and not simply on a doctor's opinion. 20 C.F.R. § 404.1545(a)(1). Here, as discussed below, the ALJ properly considered all of the relevant evidence in assessing Plaintiff's RFC, including the objective medical findings, Plaintiff's treatment history and the opinions of the doctors. (Tr. 24-35).

Plaintiff claimed that she was disabled due to back pain. When a claimant attempts to establish disability based on her subjective complaints, she must provide

evidence of an underlying medical condition and either objective medical evidence confirming the severity of his alleged symptoms or that the medical condition could be reasonably expected to give rise to his alleged symptoms. *See* 20 C.F.R. § 404.1529(a), (b); SSR 96-7p. As the following evidence established, the medical evidence of record does not support the plaintiff's allegations and instead supports the ALJ's conclusion that Plaintiff's condition did not cause disabling limitations and she could perform light work with additional exertional restrictions. (Tr. at 36-37).

In December 2000, Plaintiff presented to Thomas R. Bryant, M.D., for lower back pain after lifting a Christmas tree. (Tr. 546). Dr. Bryant noted lumbar spine x-rays were normal, a straight leg test was negative, and diagnosed Plaintiff with a lumbar strain. (Tr. 27, 545). Several days later, Plaintiff returned much improved with minimal pain on movement and negative straight leg raises. (Tr. 545). A January 2001 MRI of Plaintiff's lumbar spine showed some disc desiccation at L3-4, but at L4-5 there was no herniated disc or disc desiccation and very minimal broad based disc bulge but no effacement of the nerve. (Tr. 27, 181). Plaintiff received a lumbar epidural block in February 2001 and it was suggested she receive a series of three more. (Tr. 27, 249-50).

In February and March 2001, Plaintiff had eleven physical therapy treatments.

(Tr. 27, 204). Upon discharge, the physical therapist indicated Plaintiff had not been compliant with neutral spine education, and that she was able to paint her bedroom walls, bath cabinets, and scrub floor grout. (Tr. 27, 204). In addition, the physical therapist noted occupational tasks could be tolerated if Plaintiff complied with a suggested routine of exercise and maintaining neutral spine mechanics. (Tr. 204). In February 2001, Dr. Bryant noted that although Plaintiff's lumbar area was sore and tender, she had negative straight leg raises. (Tr. 537).

In March 2001, Plaintiff presented to Keith W. Weaver, M.D., at Birmingham Bone and Joint Surgeons. (Tr. 27, 536). Dr. Weaver noted that Plaintiff's most recent MRI showed no herniated disc, Plaintiff was walking well in the office, had negative straight leg raises, 0/2 knee and ankle reflexes, and 5/5 motor strength. (Tr. 27, 536). In April 2001, Plaintiff presented again to Dr. Bryant for continuing back pain, and Dr. Bryant indicated that he did not feel Plaintiff could do her post office job that required she carry 70 pounds all day long, and occasional lifting of 45 pounds over the head. (Tr. 28, 534).

Also in April 2001, Plaintiff presented to Edwin L. Kelsey, M.D., at Southeast Rehab Medicine, for lower back pain. (Tr. 28, 557). Dr. Kelsey noted that flexion/extension of the lumbar spine and lateral bending and rotation were within the

normal limits. (Tr. 28, 557). Dr. Kelsey recommended Plaintiff start physical therapy, including endurance exercises, range of motion exercises, strengthening exercises, and an aggressive home exercise program. (Tr. 557). A January 2003 MRI of Plaintiff's lumbar spine showed only mild focal midline disc protrusion/bulge at L4-L5, but it was not causing any significant spinal stenosis or significant impingement on exiting nerve roots. (Tr. 28, 184).

In September 2003, Plaintiff reported to Dr. Bryant that her back pain was controlled fairly well with ibuprofen, Lortab, and Soma. (Tr. 28, 526). *See* 20 C.F.R. §§ 404.1527(d)(4), 404.1529(c)(3)(iv); *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984) (suggesting that an ailment controlled with medication is not disabling). In addition, Plaintiff had a negative straight leg test, despite some tenderness in the lumbar spine. (Tr. 526). Plaintiff presented again to Dr. Bryant in November 2004 for complaints of back pain. (Tr. 410). However, Dr. Bryant noted that while Plaintiff's back was tender at the lumbosacral area, her motor, sensory, and reflex functions were normal and her straight leg raise test was negative bilaterally. (Tr. 410).

On November 24, 2004, Dr. Bryant wrote a letter to the United States Office of Personnel Management indicating that Plaintiff's low back pain would constitute risk of injury or hazard to herself or others, from performance of the essential duties

of her job. (Tr. 33, 521). The ALJ gave this opinion little to no weight because the letter was specific to Plaintiff's ability to work at her medium-to-heavy exertional position at the Post Office, and had no bearing on the RFC for light work assessed by the ALJ. (Tr. 33). In June 2005, Plaintiff presented to Dr. Bryant for complaints of back pain and he found some tenderness in the right posterior superior iliac spine area, and Plaintiff had positive straight leg tests on the right at 60 degrees. (Tr. 411). However, Plaintiff's motor, reflex, and sensory functions were all normal. (Tr. 411). In March 2006, Plaintiff received a left sacroiliac joint injection, and received relief from pain immediately afterwards. (Tr. 29, 423). A May 2006 MRI of Plaintiff's lumbar spine showed disc extrusion with lateralization to the left at L4-5 and severe facet hypertrophy, worse on the right than the left, and additional facet hypertrophy at L4-5 and to a lesser extent L3-4. (Tr. 29, 182). Otherwise the MRI was normal and no additional disc herniation was seen. (Tr. 182). In June 2008, Dr. Bryant opined that Plaintiff could not perform full-time work on a sustained basis because of absences exceeding two days per month, a need for frequent, unscheduled breaks, and an inability to stay on task and/or complete tasks in a timely manner due to chronic pain and/or side effects of pain medication. (Tr. 33, 552). The ALJ gave Dr. Bryant's opinion no weight because it was not consistent with the medical records, including

Dr. Bryant's own treatment notes. (Tr. 33). In addition, Dr. Bryant's opinion did not indicate that it relates back to the relevant time period in this case, which ended December 31, 2006. (Tr. 552). Later in January 2010, Dr. Bryant filled out a medical source statement where he opined Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, could sit for 2 hours and stand and walk for 2 hours, occasionally push/pull, climb, perform gross and fine manipulation, bend, stoop and reach, and never work around hazardous machinery. (Tr. 588). The ALJ also gave this opinion no weight because it was not consistent with the evidence of record and also did not pertain to the time period relevant in this case, ending December 31, 2006. (Tr. 33).

Plaintiff argues that the ALJ's decision to give little weight to Dr. Bryant's opinions was error, but she has not demonstrated that the ALJ lacked "good cause" for giving his opinions little weight. A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). "Good cause" exists for an ALJ to discount the weight of a treating physician's opinion when the: "(1) treating physician's opinion was not bolstered by

the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding "good cause" existed where the opinion was contradicted by other notations in the physician's record). With regard to Dr. Bryant's opinion that Plaintiff could not perform her former job as Postal Service worker, the ALJ correctly noted that Plaintiff's inability to perform such a medium to heavy exertional job has no bearing on the ALJ's RFC indicating that Plaintiff could still perform light work.[1] As to Dr. Bryant's two later opinions, Plaintiff acknowledges that they post-date the DLI and because they do not indicate that Plaintiff had disabling limitations during the DIB period, they are not relevant.

Plaintiff also suggests in passing that the ALJ should have obtained a consultative examination to further develop the record. Although there is evidence that the Commissioner attempted to obtain a consultative examination of Plaintiff but was unable to locate her, (tr. 167, 169-70), Plaintiff has still failed to show she was

---

[1]Plaintiff also appears to take issue with the fact that the Postal Service deemed her disabled, and she receives disability benefits from that agency. The ALJ considered this, correctly noting that decisions of other agencies are not binding on the Commissioner, as each agency has different standards by which disability is determined. 20 C.F.R. § 404.1504.

prejudiced regarding the development of the record. The ALJ has a duty to develop the facts fully and fairly and to probe conscientiously for all of the relevant information. *Ware v. Schwieker*, 651 F.2d 408, 414 (5th Cir. 1981). However, in all social security disability cases, the claimant bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding her impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Doughty*, 245 F.3d. at 1278; 42 U.S.C. § 423(d)(5). Furthermore, social security regulations provide that "when the evidence [on record] . . . is *inadequate* for us to determine whether you are disabled, [the ALJ] will need additional information to reach a determination or a decision." 20 C.F.R. §§ 404.1512(e), 416.912(e) (emphasis added). Therefore, where the ALJ's findings are supported by evidence sufficient for a decision, the ALJ is not obligated to seek additional medical testimony. *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). Furthermore, Plaintiff must make a "clear showing of prejudice before it is found that the [plaintiff's] right to due process has been violated to such a degree that the case must be remanded to the [ALJ] for further development of the record." *Graham v. Apfel*, 129 F.2d 1420, 1422 (11th Cir. 1997). Thus, Plaintiff must show that the lack of a record created an evidentiary gap, resulting in unfairness or clear prejudice. *See Edwards v. Sullivan*, 937 F.2d 580, 586

(11th Cir. 1991) (finding that plaintiff was not prejudiced by a lack of representation because record did not contain any discernible evidentiary gaps). Here, the objective medical evidence of record, as discussed above, contained sufficient evidence for the ALJ to make an informed decision about the limiting effects of Plaintiff's back pain. *See Doughty*, 245 F.3d at 1281; *Graham*, 129 F.3d at 1422-23. A consultative examination need not be obtained to establish absolute certainty regarding a claimant's condition, as the Social Security Act requires only substantial evidence to support an ALJ's findings. *See Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988). Thus, the ALJ clearly had enough evidence, without a consultative examination, to make an informed decision and substantial evidence supports his RFC finding.

Plaintiff also argues that the ALJ erred in his RFC finding because the record did not include a medical opinion from the period at issue that "[met] the specificity requirements of SSR 96-8p." This ruling states the Commissioner's policies regarding the assessment of a claimant's RFC and calls for a function by function analysis of each category including exertional, postural, manipulative, and environmental as well as mental for the period at issue. *See* SSR 96-8p. As an initial matter, the ALJ was not required to rely on a doctor's opinion in making his RFC finding. Although a doctor may provide an opinion regarding what a claimant can still

do, the assessment of a claimant's RFC is not a "medical opinion," and the responsibility of assessing a claimant's RFC, and determining whether the claimant is disabled, rests with the ALJ. *See* 20 C.F.R. §§ 404.1527(e), 404.1545, 404.1546(c), SSR 96-5p; *Bell v. Brown*, 796 F.2d 1350, 1353-54 (11th Cir. 1986); *see also Langley v. Astrue*, 777 F. Supp. 2d 1250, 1252-61 (N.D. Ala. 2011) (discussing why a claimant's RFC is not a medical assessment and an ALJ is not required to rely on a doctor's opinion in assessing a claimant's RFC). The ALJ discussed the relevant evidence in accordance with SSR 96-8p and specifically addressed Plaintiff's ability to sit, stand, and walk as well as other exertional limitations. (Tr. 25-36). The ALJ, therefore, was not required to further discuss Plaintiff's ability to perform each of the exertional demands. Thus, although the ALJ may not have drafted his decision as Plaintiff may have wished, the ALJ properly considered the record and substantial evidence supports his RFC finding.

Substantial evidence also supports the ALJ's finding that Plaintiff did not have any mental limitations on her ability to work. (Tr. 36). As discussed by the ALJ, undermining Plaintiff's complaints of depression are the facts that her mental complaints were well-controlled with medication prescribed by her primary care physician and Plaintiff did not have psychiatric treatment on a consistent basis. (Tr.

33). *See* 20 C.F.R. §§ 404.1527(d)(4), 404.1529(c)(3)(iv). As discussed by the ALJ, in October 2005 Plaintiff had a psychiatric evaluation performed by Wayne Gossman, M.D., at the Birmingham Pain Center. (Tr. 29, 481-84). As noted by the ALJ, Plaintiff reported taking her prescription medication correctly "most of the time," but would increase her medication with increased amounts of pain, causing her to run out of medication early each month. (Tr. 29, 481). While out of medication, Plaintiff reported that she "toughs it out." (Tr. 29, 481). Plaintiff also reported that she was able to care for herself, including bathing, dressing, and tying her shoes, and she did a limited amount of chores around the house and cooked. (Tr. 29, 482). As the ALJ noted, the results of her personality assessment inventory also showed some symptom magnification, which indicates that she was over-representing her symptoms. (Tr. 29, 483). In sum, Plaintiff has failed to show she had any work-related mental limitations and substantial evidence supports the ALJ's RFC finding.

    C.    The ALJ Was Not Required to Obtain Evidence from a Medical Expert ("ME")

Plaintiff alleges that the ALJ failed to apply SSR 83-20 by failing to obtain the testimony of an ME. Plaintiff's argument is without merit because SSR 83-20 does not apply to her case. SSR 83-20 discusses the need for the ALJ to use an ME to determine the onset date when the claimant has been found disabled. Here, the ALJ

did not find Plaintiff disabled. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997) ("Since there was no finding that the claimant is disabled as a result of his mental impairment or any other impairments or combination thereof, no inquiry into onset date is required."). As such, the ALJ properly considered the relevant evidence in finding that Plaintiff was not disabled on or before December 31, 2006.

IV.  Conclusion

Upon review of the administrative record, and considering all of Ms. Shipman's arguments, the Court finds the Commissioner's decision is consistent with all due process requirements, supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 29th day of September 2014.

*[signature]*
L. Scott Coogler
United States District Judge
[160704]